**PPL, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (REBO), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 1, 2010.

Decided Sept. 10, 2010.

Reargument Denied Nov. 5, 2010.

John J. Muldowney, Philadelphia, for petitioner.

David R. Thompson, Philipsburg, for respondent.

BEFORE: LEADBETTER, President Judge, BROBSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

PPL (Employer) petitions for review from an order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of a Workers' Compensation Judge (WCJ) denying its Termination Petition. We affirm.

Sandra Rebo (Claimant) receives workers' compensation benefits as a dependent spouse following the death of her husband, George Rebo (Decedent). Employer filed a Termination Petition on June 12, 2008 seeking to cease compensation payments alleging that Claimant was involved in a meretricious relationship. Employer subsequently amended its Petition to seek alternative relief based on an allegation that Claimant had remarried.

Claimant testified that she is the widow of Decedent and that she has not remarried since the death of her husband. She acknowledged that she resides in a home with Gary McDonald. According to Claimant, she and Mr. McDonald split expenses. They do not currently engage in any sexual activity. Claimant acknowledged that she and Mr. McDonald did previously engage in sexual activity off and on through 2006. Claimant emphasized that she has no intention of marrying Mr. McDonald. She added that the two do not hold themselves out as husband and wife.

At a subsequent hearing, Claimant agreed that she and Mr. McDonald represented to Mr. McDonald's employer that they were common law husband and wife. She agreed that the purpose of their statements was to get her placed on his health insurance. She further acknowledged she and Mr. McDonald have completed their federal income taxes as "married filing jointly." Nonetheless, Claimant stated she never engaged in an official marriage ceremony with Mr. McDonald. She added the two have never discussed that they were a married couple or agreed to being married.

Mr. McDonald also testified in this matter. He agreed he represented to his employer, Phillipsburg Borough, that he and Claimant were common law husband and wife for the purpose of having her placed on his health insurance. He further agreed that the two completed tax forms as "married filing jointly." According to Mr. McDonald, he also attempted to add Claimant to his union benefits as a common law spouse. Mr. McDonald has not represented to other parties that he is married to Claimant. He explained any statements regarding the two being husband and wife were for the sole purpose of saving money. They never agreed to be married.

By a decision dated March 24, 2009, the WCJ denied Employer's Termination Petition. He concluded that Employer failed to meet its burden of proving Claimant

was involved in a meretricious relationship. The WCJ further determined that Employer did not establish a right to any relief based upon Claimant entering into a common law marriage. The WCJ acknowledged that, *inter alia,* Claimant and Mr. McDonald live together, that they engaged in sexual relations for a period of time, that they filed tax returns as a married couple, and that they represented to Mr. McDonald's employer that they were a married couple for insurance purposes. Nonetheless, the WCJ determined that Claimant and Mr. McDonald never formed any intent to enter into common law marriage. Instead, he determined "they have simply tried to 'game the system' by saying that they were common law married when that posture benefited them financially." Dec. dated 3/24/09, p. 5.

In reaching his determination, the WCJ credited the testimony of Mr. McDonald based on his personal observations. He rejected Claimant's testimony as it was clear to him "that she would not hesitate to manipulate the facts in whatever way might be financially beneficial to her ..."[1] Dec. dated 3/24/09, p. 5. The Board affirmed the WCJ's decision. This appeal followed.[2]

█ Employer argues on appeal that the WCJ erred in determining it failed to satisfy its burden of establishing Claimant and Mr. McDonald entered into a common law marriage. According to Employer, both individuals expressed their contract of marriage to several people, including those involved in the federal government who would be privy to their income tax information as well as representatives of Mr. McDonald's employer.

Section 307 of the Pennsylvania Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 561, provides as follows:

> In case of death, compensation shall be computed on the following basis, and distributed to the following persons:
>
> (2) To the widow or widower, if there be no children, fifty-one per centum of wages, but not in excess of the State-wide average weekly wage.
>
> . . .
>
> Should any dependent of a deceased employe die or remarry, or should the widower become capable of self-support, the right of such dependent or widower to compensation under this section shall cease except that if a widow remarries, she shall receive one hundred four weeks compensation at a rate computed in accordance with clause (2) in a lump sum after which compensation shall cease ...

█ The burden to prove a common law marriage is on the party alleging the marriage. *Staudenmayer v. Staudenmayer,* 552 Pa. 253, 714 A.2d 1016 (1998). A common law marriage can only be created by an exchange of words in the present tense, spoken with the specific purpose of creating the legal relationship of husband and wife. *Id.* at 261–2, 714 A.2d at 1020. *Bowden v. Workmen's Compensation Appeal Board and G. & W.H. Corson Co.,* 31 Pa.Cmwlth.476, 376 A.2d 1033 (1977).

---

1. A WCJ is free to credit the testimony of any witness in whole or in part. *Gentex Corp. v. Workers' Compensation Appeal Board (Morack),* 975 A.2d 1214 (Pa.Cmwlth.2009). Credibility determinations are not reviewable by this Court. *Campbell v. Workers' Compensation Appeal Board (Pittsburgh Post Gazette),* 954 A.2d 726 (Pa.Cmwlth.2008).

2. Our review is limited to determining whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence and whether constitutional rights were violated. *Young v. Workers' Compensation Appeal Board (LGB Mech.),* 976 A.2d 627 (Pa.Cmwlth.2009).

This is a heavy burden and must be established by clear and convincing evidence. *Staudenmayer,* 552 Pa. at 262, 714 A.2d at 1020. Although no magic words are required, proof of the actual intention of the parties to form a marriage contract is indispensable to the existence of a common law marriage. *Bowden,* 376 A.2d at 1034. The validity of a common law marriage is a mixed question of fact and law. *Giant Eagle v. Workmen's Compensation Appeal Board (Bahorich),* 144 Pa.Cmwlth.552, 602 A.2d 387 (1992).

■ When one party is unable to testify regarding *verba in praesenti,* there is a rebuttable presumption in favor of common law marriage when the burdened party proves constant cohabitation and a reputation of marriage. *Staudenmayer,* 552 Pa. at 263–4, 714 A.2d at 1020–1. Reliance on such a presumption based on proof of cohabitation and reputation is only proper where direct evidence of the alleged marriage agreement is unavailable. *Id. See also Giant Eagle,* 602 A.2d at 388. We have found the following sufficient to support a fact-finder's determination that a couple had entered into a common law marriage:

> [T]he evidence indicated that Decedent did provide support to Claimant and that he considered it his obligation to do so. Additionally, the record reveals Claimant and Decedent purchased property in joint names; purchased automobile insurance in joint names; filed joint tax returns; had received mail as "husband and wife" and that Decedent had sent cards to Claimant as his "wife". (sic)

*Stuck Leasing Co. v. Workmen's Compensation Appeal Board (Ziegler),* 125 Pa. Cmwlth.237, 557 A.2d 808, 811 (1989).

Conversely, it has also been stated:

> The mere fact that [claimant and decedent] were known to a few people as

man and wife is not sufficient evidence to establish marriage. Proof by reputation for such purposes must be general and not confined to a few persons in the immediate neighborhood, as the relationship may be established merely for the purpose of deceiving others.

*Giant Eagle,* 602 A.2d at 389 (citing *Estate of Rees,* 331 Pa.Super. 225, 480 A.2d 327, 329 (1984)).

■ We must reiterate that "[c]ohabitation and reputation are not a marriage; they are but circumstances from which a marriage may be presumed, and such presumption may always be rebutted and will wholly disappear in the face of proof that no marriage has occurred." *Bowden,* 31 Pa.Cmwlth. 476, 376 A.2d 1033, 1034 (1977)(citing *Commonwealth ex rel. McDermott v. McDermott,* 236 Pa.Super. 541, 345 A.2d 914 (1975)).

In *Staudenmayer,* the Supreme Court explained that claims of common law marriage present a fruitful source of perjury and fraud. *Staudenmayer,* 552 Pa. at 261, 714 A.2d at 1019. This Court, in *PNC Bank Corp. v. Workers' Compensation Appeal Board (Stamos),* 831 A.2d 1269 (Pa.Cmwlth.2003), prospectively abolished the doctrine of common law marriage. The Act of November 24, 2004, P.L. 954 (Act 144), amended Section 1103 of the Marriage Law to provide as follows: "No common-law marriage contracted after January 1, 2005, shall be valid. Nothing in this part shall be deemed or taken to render any common-law marriage otherwise lawful and contracted on or before January 1, 2005, invalid." 23 Pa.C.S. § 1103. In light of the Legislature's action, this Court has determined that any common law marriage contract entered into prior to January 1, 2005 remained valid thereby superseding the *PNC Bank*

decision. *Costello v. Kinsley Constr., Inc.,* 916 A.2d 1242 (Pa.Cmwlth.2007).

In order to succeed in its Termination Petition, Employer had the burden of establishing Claimant and Mr. McDonald had entered into a common law marriage. *Staudenmayer.* It had to establish the parties entered into the common law marriage before January 1, 2005. 23 Pa.C.S. § 1103; *Costello.* Because both parties were present and available to testify, evidence of words *in praesenti* sufficient to establish a definite agreement to marry were required in order for Employer to satisfy its burden. *Staudenmayer; Giant Eagle; Bowden.* Reliance on any presumption of common law marriage based on proof of cohabitation and reputation was unavailable to Employer.

The WCJ was not convinced that Claimant and Mr. McDonald formed an intention to be married. Although he rejected Claimant's testimony, he credited Mr. McDonald's statements that the two never agreed to be married and that any statements to the contrary were made for the sole purpose of financial gain. Credibility determinations are the sole province of the WCJ. *Gentex Corp.* They are not reviewable by this Court. *Campbell.* Whether a common law marriage exists is a mixed question of both law and fact. *Giant Eagle.* We see no basis, however, to reverse the WCJ's ruling herein.

■ We note that even if we were to consider evidence of cohabitation and reputation, Employer would not succeed on this appeal. There was admittedly evidence showing cohabitation and reputation consistent with *Stuck Leasing Co.* Claimant and Mr. McDonald, among other things, did file joint tax returns. They did represent themselves on limited occasion as husband and wife when they deemed it necessary. Proof of common law marriage by reputation, however, must be general

and not confined to a few select individuals. *Giant Eagle.* The mere fact that parties were known to a few people as man and wife is not sufficient evidence to establish marriage. *Id.*

It must be reiterated that claims of common law marriage are a fruitful source of perjury and fraud. *Staudenmayer.* The evidence of record and the issue presented in this matter is a prime example of the concerns raised in *Staudenmayer.* We will not be solicitous in finding a common law marriage where the direct proof required by *Staudenmayer* and *Giant Eagle* is missing.

It should be noted that while we see no error in the WCJ's conclusion that the Claimant and Mr. McDonald never exchanged words in the present tense to form a contract for marriage, we take exception to the WCJ's statement that they "simply tried to game the system." "Gaming the system" apparently means "[t]o use the rules and procedures meant to protect a system in order to instead manipulate the system for a desired outcome." *http://en.wiktionary.org/wiki/ game_the_system* (last visited Aug., 5, 2009). There is no evidence of record to support the WCJ's finding that basically says that Claimant and McDonald merely used rules and procedures meant to protect the system for their financial benefit. In fact, for their own financial benefit, they have *violated* the rules and procedures meant to protect the system and have acted in bad faith by intentionally deceiving Mr. McDonald's employer—Philipsburg Borough and its resident taxpayers— and the United States government. Nevertheless, in light of the WCJ's other findings, we are constrained to find Employer, as a matter of law, did not establish Claimant and Mr. McDonald entered into a com-

mon law marriage.[3]

■ Employer next argues that the WCJ failed to issue a reasoned decision. It challenges the fact that the WCJ rejected Claimant's testimony, yet credited Mr. McDonald's testimony even though their testimony was essentially identical. Employer further questions how Mr. McDonald can be deemed credible inasmuch as both he and Claimant were found by the WCJ to have "gamed the system" for their financial benefit. Employer's contentions must be rejected.

■ Section 422(a) of the Act, 77 P.S. § 834, provides that all parties to an adjudicatory proceeding are entitled to a reasoned decision. Where the fact-finder has had the advantage of seeing the witnesses testify live and the opportunity to assess their demeanor, a mere conclusion as to which witnesses he deems credible is sufficient to render the decision adequately "reasoned." *Community Empowerment Ass'n v. Workers' Compensation Appeal Board (Porch)*, 962 A.2d 1 (Pa.Cmwlth. 2008). A decision is "reasoned" if it allows for adequate review without further elucidation. *Moberg v. Workers' Compensation Appeal Board (Twining Village)*, 995 A.2d 385 (Pa.Cmwlth.2010).

Both Claimant and Mr. McDonald appeared live before the WCJ. He had the opportunity to observe their demeanor and render credibility determinations on this basis. *Porch.* These credibility determinations are not reviewable. *Campbell.* The WCJ provided a detailed analysis to support his determination that despite the evidence of cohabitation and reputation, there was no evidence of any actual intent to enter into a common law marriage. We

are capable of exercising effective appellate review without further elucidation. *Moberg.* Employer's complaints that the testimony of Mr. McDonald was credited despite the fact that it was consistent with the incredible testimony of Claimant and that he also attempted to manipulate facts for his financial gain misses the point. Even if his testimony were rejected, Employer could not prevail. Both alleged participants in a common law marriage were present and neither offered evidence of words in the present tense, spoken with the specific purpose of creating the legal relationship of husband and wife. *Staudenmayer; Giant Eagle; Bowden.* Employer could not succeed as a matter of law.

■ Finally, Employer asserts equitable principles warrant that its Termination Petition be granted. It notes that the record evidences the fact that in completing tax forms and applying for benefits, Claimant and Mr. McDonald have been more than willing to hold themselves out as a married couple to reap financial benefits. Yet, by the same token, they are disavowing their common law marriage in order to continue to collect workers' compensation benefits. According to Employer, Claimant and Mr. McDonald must be bound by their prior admissions in order to prohibit an abuse of the workers' compensation system.

■ In some instances, relief may be granted in workers' compensation matters to prevent unjust enrichment or double recovery. *See Mino v. Workers' Compensation Appeal Board (Crime Prevention Ass'n)*, 990 A.2d 832 (Pa.Cmwlth.2010)(holding an employer that has paid an injured worker an exces-

---

**3.** While this Court cannot afford Employer the relief it seeks, Employer is free to report any purported fraudulent activities to the proper authorities. Whatever remedies that might exist to those harmed by Claimant and Mr. McDonald's dishonest conduct is a question that must be left to another proceeding, in another forum, at another time.

sive amount of money under the mistaken belief that the sum paid was necessary for the discharge of a duty is entitled to an offset to preclude the claimant's unjust enrichment); *Burrell v. Workers' Compensation Appeal Board (Philadelphia Gas Works)*, 849 A.2d 1282 (Pa.Cmwlth.2004)(holding where an employee is admittedly working but there is no evidence the employee actually received compensation for services rendered, the employer is not entitled to a credit for overpayment of compensation since there is no unjust enrichment under these circumstances); *Kiebler v. Workers' Compensation Appeal Board (Specialty Tire of America)*, 738 A.2d 510 (Pa.Cmwlth.1999)(holding that an employer can recoup any overpayment made to a claimant because an annual bonus was improperly applied entirely to the quarter it was received as opposed to being allocated over the entire year when calculating the AWW).

We decline to afford equitable relief in this instance. There is no clear right to equitable relief in this workers' compensation matter. Claimant was entitled to workers' compensation benefits based upon the death of her husband consistent with Section 307 of the Act. Those benefits are to continue until she remarries. *Id.* All payments made by Employer were in accordance with its duty under Section 307 of the Act. As such, no equitable relief is available consistent with *Mino.* Further, there is no evidence of an overpayment of workers' compensation benefits. Consequently, there is no "unjust enrichment" as contemplated in *Burrell* or *Kiebler.*

While there is evidence that Claimant has offered different stories concerning her marital status depending on what she feels is most beneficial to her, the *credible* evidence before us is that Claimant and Mr. McDonald never actually entered into an agreement for marriage. To the extent Employer wishes us to vindicate any supposed past misdeeds committed by Claimant for benefits unrelated to workers' compensation, we note that in matters of workers' compensation, one should avoid the dispensing of "rough justice." *See Lakomy v. Workers' Compensation Appeal Board (Department of Envtl. Resources)*, 720 A.2d 492 (Pa.Cmwlth.1998)(holding a WCJ may not take into consideration extenuating circumstances unrelated to an employers' violation of the Act in determining whether a claimant is entitled to penalties). As stated above, any consequences that may result from Claimant and Mr. McDonald's improper conduct must have their genesis in another proceeding at another time.

After a review of the record, we conclude that the Board did not err in affirming the WCJ's decision as all findings are supported by substantial evidence. Accordingly, the order of the Board is affirmed.

### ORDER

AND NOW, this 10th day of September, 2010, the order of the Workers' Compensation Appeal Board in the above-captioned matter is AFFIRMED.

CONCURRING OPINION BY
President Judge LEADBETTER.

I agree that the law as it now stands requires affirmance. However, had employer raised the meretricious relationship issue on appeal, I would have advocated distinguishing, or perhaps overruling prior cases and found a meretricious relationship here.

I recognize that we are bound by the WCJ's credibility determinations, and thus the finding that there was no common law marriage. However, given the duplicitous conduct of Ms. Rebo and Mr. McDonald as

described by the majority, this result is outrageous.  Therefore, I concur in the result only.