AETNA CASUALTY AND SURETY COMPANY, Plaintiff,

v.

Mary K. ERICKSEN, Duane Ericksen, and Salim Qureshi, Defendants.

No. 4:CV–94–0953.

United States District Court, M.D. Pennsylvania.

Oct. 27, 1995.

Douglas B. Marcello, Thomas Thomas & Hafer, Harrisburg, PA, for plaintiff.

Anthony J. Primerano, Kennedy and Lucadamo, Hazleton, PA, Robert S. Mirin, Harrisburg, PA, for defendants.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On June 20, 1994, plaintiff Aetna Casualty and Surety Co. initiated this action with the filing of a complaint seeking a declaratory judgment pursuant to 28 U.S.C. §§ 2201, 2202. Plaintiff seeks a ruling that it is not liable to defend and indemnify defendants Mary K. and Duane Ericksen (collectively, "Ericksens") with respect to claims against them by defendant Salim Qureshi. The Ericksens have asserted counterclaims against Aetna for breach of contract, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and bad faith.

Before the court are cross-motions for summary judgment.

### DISCUSSION:

#### I. STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*" Fed.R.Civ.P. 56(c) (emphasis added).

> ... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 323, 325, 106 S.Ct. at 2552–2553, 2554.

Issues of fact are genuine "only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph,* 842 F.2d 689, 694 (3d Cir.1988) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–2511, 91 L.Ed.2d 202 (1986)). Material facts are those which will affect the outcome of the trial under governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3d Cir.1988).

## II. STATEMENT OF FACTS

On October 13, 1993, defendant Salim Qureshi filed a complaint in the Court of Common Pleas of Columbia County, Pennsylvania, naming the Ericksens as defendants. In that action, Qureshi alleged that Mary K. Ericksen was liable for falsely and publicly accusing Salim Qureshi of sexual harassment. Also, Qureshi claimed that he was assaulted by Duane Ericksen. The complaint arose out of events occurring while both Qureshi and Mary K. Ericksen were employed as faculty members by Bloomsburg University.

### A. Qureshi's Claims

The events giving rise to Qureshi's claim against Mary K. Ericksen began with a department meeting on September 28, 1992. Mary K. Ericksen had circulated the results of an unauthorized student survey which was critical of Qureshi, and she was forced to apologize to Qureshi during the meeting. The next day, Mary K. Ericksen submitted to the Dean of the College of Business a complaint alleging sexual harassment by Qureshi. Qureshi claims that the memoran-dum was drafted in retaliation for his complaint concerning the student survey.

Mary K. Ericksen withdrew her complaint so that the matter could be resolved informally, but the process was not productive. She therefore filed a second complaint with the University alleging sexual harassment in the workplace and an unpleasant work environment. The University Provost found that Qureshi had sexually harassed Mary K. Ericksen and ordered him to report to the dean and watch tapes on sexual harassment. Also, a letter regarding the charges was placed in Qureshi's personnel file.

The disposition was unsatisfactory to Mary K. Ericksen. She spoke to a reporter from a local newspaper, which published an article describing the hearing process, the allegations of sexual harassment, and Mary K. Ericksen's opinion as to the outcome.

Qureshi's other claim, that against Duane Ericksen, related to an incident following a fact-finding hearing on November 10, 1992. Duane Ericksen appeared in the hearing room, rushed at Qureshi, and physically menaced and verbally threatened Qureshi. Qureshi's complaint alleges that the actions of Duane Ericksen constitute assault.

### B. The Aetna Policy

Aetna issued to the Ericksens a homeowner's insurance policy which reads in part:

If a claim is made or a suit is brought against any insured for damages because of bodily injury, personal injury or property damage caused by an occurrence to which the coverage [sic] applies, we will:

a. pay up to our limit of liability for the damages for which the insured is legally liable; and

b. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages resulting from the occurrence equals our limit of liability.

Complaint, Exhibit A at 25 (rider appended to policy, captioned "SECTION II—LIA-

BILITY COVERAGES, COVERAGE E—PERSONAL LIABILITY").

Relevant terms defined in the policy include:

"bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

"business" includes trade, profession or occupation.

. . . . .

"occurrence" means an accident, including continuous or repeated exposure to substantially the same generally harmful conditions which results, during the policy period, in:

a. bodily injury; or

b. property damage.

"property damage" means physical injury to, destruction or, or loss of use of tangible property.

Complaint, Exhibit A at 1–2 ¶¶ 2, 3, 6, 7.

The following definition is added by the rider to the policy:

"personal injury" means injury arising out of one or more of the following:

a. false arrest, detention or imprisonment, or malicious prosecution;

b. libel, slander or defamation of character; or

c. invasions of privacy, wrongful eviction or wrongful entry.

Complaint, Exhibit A at 23 ¶ 9 (first paragraph so numbered).

The "EXCLUSIONS" section of the policy states:

Coverage E—Personal Liability and Coverage F—Medical Payments to Others do not apply to bodily injury or property damage:

. . . . .

b. Arising out of or in connection with a business engaged in by any Insured. This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstances involving a service or duty rendered, promised, owed

or implied to be provided because of the nature of the business;

Complaint, Exhibit A at 14 ¶ 1(b).

Moreover, the rider to the policy provides that Coverage E—Personal Liability does not apply to "personal injury . . . arising out of the business of any insured . . ." Complaint, Exhibit A at 25–26 ¶ 2(f)(4).

### C. Issue Presented

Based on a reading of Qureshi's complaint in the Court of Common Pleas and the insurance policy at issue, the issue before the court is whether Qureshi's allegation of libel based on (1) a complaint to an employer and (2) discussion of the complaint with a newspaper arises out of Mary K. Ericksen's employment as a professor at Bloomsburg University.

### III. BUSINESS PURSUITS EXCLUSION

In determining whether an insurance company has a duty to defend an action filed against an insured, the court reviews the language of the complaint filed against the insured. *Sun Alliance Insurance Co. of Puerto Rico v. Soto,* 836 F.2d 834, 835 (3d Cir.1988). An activity is a "business pursuit" when there is (1) continuity and (2) profit motive. *Sun Alliance,* 836 F.2d at 836. In this case, it is clear that Mary K. Ericksen's activities as a professor were a business pursuit, especially since the definition of "business" in the policy includes "profession" and "occupation." The question then becomes whether the statements made by Mary K. Ericksen which caused the alleged injury "arose out of" that employment.

Neither party cites a case which purports to define "arising out of" for purposes of a business pursuits exclusion in a homeowner's insurance policy. As argued by Aetna, the most analogous law appears to be that of workers' compensation, which generally provides for the compensation of employees for injuries "arising out of and in the course of employment." Black's Law Dictionary 108 (6th ed. 1990). More specifically:

Workers' compensation acts provide for compensating an

employee whose injury is one "arising out of and in the course of the employment." These words describe an injury directly and naturally resulting in a risk reasonably incident to the employment.... They mean that there must be some causal connection between the conditions under which the employee worked and the injury which he received.

The words "arising out of employment" refer to the origin of the cause of the injury, while "course of employment" refers to the time, place, and circumstances under which the injury occurred. An injury arises "out of" employment if it arises out of nature, conditions, obligations and incidents of employment....

*Id.* (citations omitted). In addition, the same source provides:

The expression "in the course of his employment," in the rule that an employer is liable for the torts of an employee done in the course of the employment, means while engaged in the service of the employer while engaged generally in the employer's work, as distinguished from acts done when the employee steps outside of employment to do an act for himself or herself not connected with the employer's business. The test as to whether an injury has arisen out of the "course of employment" is whether there is a causal connection between the duties of employment and the injury suffered....

Black's Law Dictionary 352 (6th ed. 1990).

Under Pennsylvania law, a claimant is entitled to compensation for "an injury to an employe, regardless of his previous physical condition, arising in the course of his business and related thereto ..." 77 Pa.Stat.Ann. § 411(1). The claimant must show that the injury arose in the course of the employment and was causally connected to the employment. *Bennett v. Workmen's Compensation Appeal Board,* 157 Pa.Cmwlth. 124, 629 A.2d 208, 211 (1993).

It also should be noted that no more general language is used in the business pursuits exclusion contained in the policy at issue, such as excluding personal injuries occurring while the insured was engaged in business pursuits, which would exclude the causal con-

nection inherent in the use of "arising out of." Finally, we note that at least two courts have found language nearly identical to that at issue in this case to be unambiguous. *Travelers Indemnity Co. v. Fantozzi,* 825 F.Supp. 80, 84–85 (E.D.Pa.1993) (citing *Myrtil v. Hartford Fire Insurance Co.,* 510 F.Supp. 1198, 1201 (E.D.Pa.1981)).

▪ Based on the language of the exclusion, we conclude that an insurer is not liable to defend and indemnify an action wherein an injury is alleged in a complaint (1) to have been caused by the insured while the insured was engaged in his or her business, as that word is defined in the policy, and (2) to have a causal connection to the business of the insured.

### IV. COMPLAINT TO THE DEAN

▪ The first statements by Mary K. Ericksen about which Qureshi complained were those set forth in the letter to the Dean of the College of Business alleging sexual harassment by Qureshi. The memorandum was submitted in order to begin proceedings against Qureshi consistent with the University's sexual harassment policy and procedure. Defendants' Statement of Material Facts at 5 ¶ 16; Plaintiff's Response to Statement of Material Facts at 3 ¶ 16. Thus, the institution of proceedings in this manner was a part of the way in which Mary K. Ericksen performed her job. That is, the drafting and submission of the memorandum was in the course of her employment, and any injuries resulting therefrom "arose out of" her employment.

The business pursuits exclusion applies to the alleged injuries resulting from circulation of the memorandum in question.

### V. DISCUSSION WITH REPORTER

▪ The discussion of the memorandum and its contents with a newspaper reporter, however, is separate and apart from Mary K. Ericksen's complaint to the Dean about sexual harassment by Qureshi. The internal administrative process, as set forth in the University's sexual harassment policy, is intended to remain confidential. Documents in Support of Plaintiff's Motion for Summary

Judgment, Exhibit 24 at 4–5. Mary K. Ericksen is nowhere said to have public relations responsibilities for the University, save recruitment of potential students to the department. Nor did the publication of the allegedly libelous statement arise in the context of a class taught by Mary K. Ericksen.

Plaintiff points to factors such as the interview taking place in Mary K. Ericksen's office at the University, and the fact that the subject matter of the interview involved what may have occurred at the University. However, there is no causal connection between the performance of Mary K. Ericksen's professional duties and the alleged injury suffered by Qureshi.

■ We conclude, therefore, that the alleged injury to Qureshi did not arise out of Mary K. Ericksen's profession, and the business pursuits exclusion does not apply to statements made to the newspaper. Since the complaint alleges a cause of action which falls within the coverage of the policy, plaintiff is obligated to defend the action in state court. *Aetna Life and Casualty Co. v. Barthelemy*, 33 F.3d 189, 193 (3d Cir.1994).

## VI. DEFENDANTS' COUNTERCLAIMS

In their answer, Ericksens assert counterclaims against Aetna in the form of: (1) an action for declaratory judgment which is the obverse of Aetna's claim; (2) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (CPL), 73 Pa.Stat. Ann. §§ 201–1 et seq.; and (3) bad faith under 42 Pa. Cons.Stat.Ann. § 8371. As to the declaratory judgment action, our disposition of Aetna's claim controls disposition of that claim.

With respect to their CPL claim, defendants point to no specific provision of that law which Aetna's conduct purportedly violated. The applicable language of Count II of the counterclaim reads:

> The conduct of the Plaintiff, Aetna Casualty and Surety Company, in refusing to provide coverage and a defense to Defendants, Mary K. Ericksen and Duane Ericksen for the aforementioned claim brought by Salim Qureshi constitutes unfair or deceptive acts or practices within the mean-

ing of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201.2(4) [sic].

Answer and Counterclaim at 9 ¶ 20.

■ Aetna first argues that the Ericksens are contending that a violation of the Pennsylvania Unfair Insurance Practices Act (UIPA), 40 Pa.Cons.Stat.Ann. §§ 1171.1 et seq., is the basis for the CPL claim. The Ericksens respond that UIPA is not the sole basis for recovery. *See Pekular v. Eich,* 355 Pa.Super. 276, 513 A.2d 427, 433–434 (1986), *allocatur denied,* 516 Pa. 635, 533 A.2d 93 (1987) (table). Regardless, an insurer may be held liable under the CPL only if there are fraudulent misrepresentations in order to sell a policy, *Pekular,* 513 A.2d at 428, or some other form of misfeasance. An insurer is not liable under the CPL for simple failure to perform, which amounts to nonfeasance. *Parasco v. Pacific Indemnity Co.,* 870 F.Supp. 644, 647–648 (E.D.Pa.1994).

We conclude that the Ericksens do not have a claim under the CPL based on the provision quoted above.

■ Finally, the Ericksens claim that the refusal to defend and indemnify related to the state court action constitutes bad faith under Pennsylvania law. Actually, the point raised by Aetna in this action, i.e. the business pursuits exclusion, is of considerable merit. We see no bad faith in refusing to defend and indemnify based on a reasonable interpretation of the language of the policy, though we have reached a different conclusion. It also should be noted that it was Aetna, not the Ericksens, which brought this action to determine the rights of the parties in relation to the policy at issue.

We conclude that there has been no bad faith on the part of Aetna either in refusing to defend and indemnify in the state court action, or in bringing the instant declaratory judgment action.

## VII. CONCLUSION

The parties' cross-motions for summary judgment will be granted in part and denied in part. Aetna will be directed to defend the state court action or to reimburse the Ericksens costs and fees incurred as a result of

that action. Also, Aetna shall indemnify the Ericksens as to the claim of libel in the statements made to the newspaper reporter. Aetna shall not be responsible to indemnify Qureshi's claim as it relates to statements set forth in the memorandum circulated as part of the sexual harassment claim within the University's internal administrative process.

Partial summary judgment will be granted in favor of the Ericksens on their claim for declaratory relief, consistent with the holding as it relates to Aetna's claim for declaratory relief. Summary judgment will be entered in favor of Aetna relating to the Ericksens remaining claims.

An appropriate order shall issue.

## *ORDER*

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. The motion (record document no. 11) for summary judgment filed by plaintiff Aetna Casualty and Surety Co. is granted in part and denied in part, as set forth below.

2. The motion (record document no. 17) for summary judgment filed by defendants Mary K. Ericksen and Duane Ericksen is granted in part and denied in part, as set forth below.

3. Aetna Casualty and Surety Co. is required under the terms of the applicable insurance policy to defend the action filed in state court by defendant Salim Qureshi.

4. Aetna Casualty and Surety Co. is required to indemnify Mary K. Ericksen and Duane Ericksen with respect to Salim Qureshi's claim of libel related to Mary K. Ericksen's statements to a reporter concerning the alleged sexual harassment by Salim Qureshi.

5. No further relief sought by any party to this action is warranted.

6. The clerk is directed to enter judgment consistent with the foregoing, and to close the file.