# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Clarence Stewart,                          :
                    Petitioner             :
                                           :
          v.                               :    No. 614 C.D. 2019
                                           :    Submitted: January 31, 2020
Workers' Compensation Appeal               :
Board (Goodwill of Pittsburgh),            :
                    Respondent             :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE CHRISTINE FIZZANO CANNON, Judge


**OPINION NOT REPORTED**


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**                    **FILED: August 26, 2020**


Clarence Stewart (Claimant) petitions for review of the April 25, 2019 Order of the Workers' Compensation (WC) Appeal Board (Board), which affirmed the Workers' Compensation Judge's (WCJ) Decision and Order (Decision) denying Claimant's Claim Petition. The WCJ concluded that Claimant did not meet his burden of proving that he sustained a work-related low back injury with leg radiculopathy on April 25, 2017, while working at Goodwill of Pittsburgh (Employer). On appeal, Claimant argues that the Board erred in affirming the WCJ's Decision because the WCJ's credibility determinations were based on a misapprehension of fact and incompetent evidence, and the Decision was not supported by substantial, competent evidence. Upon review, we affirm.

## I. **Background**

On January 12, 2018, Claimant filed a pro se Claim Petition, averring that, on April 25, 2017, he sustained a work-related injury. (Reproduced Record (R.R.) at 1-2.)[1] Claimant sought payment for only his medical bills. (*Id.* at 2.) Employer filed an Answer to the Claim Petition alleging that Employer was "without sufficient knowledge or information to form a bel[i]ef as to the truth or falsity of the allegation[s] in the petitions. [Employer] therefore specifically den[ies] each and every allegation in the petition and demand[s] strict proof thereof at the time of the hearings in the case." (*Id.* at 4.) The matter was assigned to a WCJ, who held hearings on February 23, 2018, and June 22, 2018. (WCJ Decision at 3.) At the first hearing, Claimant "appeared with legal counsel [who] averred [that Claimant sustained] a low back injury with right leg radiculopathy [and] no surgery ha[d] been scheduled." (WCJ Decision, Finding of Fact (FOF) ¶ 2.) At the hearings, Claimant presented his own testimony and the medical reports of Scott G. Rainey, D.O., and Employer submitted the Independent Medical Examination (IME) report of Victor J. Thomas, M.D.[2] (*Id.* ¶¶ 9-10.)

Claimant testified as follows at the first hearing.[3] Claimant worked as a warehouse specialist for Employer which required him to deliver office supplies and "lift/carry up to 45[] to 50[ ]pounds." (*Id.* ¶ 4.) "On April 25, 2017, he was injured when . . . he was lifting and swinging a box of papers weighing 45[ ]pounds to put

---

[1] The reproduced record page numbers are not followed by a small "a" as required by Pennsylvania Rule of Appellate Procedure 2173, Pa.R.A.P. 2173, and thus are not followed by a small "a" herein.

[2] The Claim Petition sought only payment of medical benefits, and, therefore, the parties submitted only expert witness reports. *See Montgomery Tank Lines v. Workers' Comp. Appeal Bd. (Humphries)*, 792 A.2d 6, 10-11 (Pa. Cmwlth. 2002).

[3] Claimant's testimony can be found on pages 149-170 of the reproduced record and is summarized in finding of fact ¶ 4.

under a table and he felt a pop in his lower back about the belt line or a little below on the right side." (*Id.*) Claimant was working with his supervisor and there were no other witnesses to the injury. Claimant immediately reported it to the supervisor and an Incident Report was completed. The Incident Report reflected that Claimant "felt a pop and crack in his back, followed by pain down his left side." (R.R. at 122.) Claimant did not stop working or immediately seek medical attention for the injury, and instead "he did exercises on his own." (FOF ¶ 4.) Claimant sought medical treatment from Dr. Rainey in September 2017. Upon evaluation, Dr. Rainey ordered X-rays and an MRI to evaluate Claimant's injuries but did not remove Claimant from work or impose any work restrictions. Furthermore, Dr. Rainey prescribed epidural injections to treat Claimant's pain, but they "have not helped." (*Id.*) Claimant acknowledged a prior back injury in 2015 from a non-work-related incident. The prior injury required surgery, but Claimant was subsequently cleared for work. "In the 2015 incident, [Claimant's] left leg was affected and on the April 25, 2017 incident, his right leg was affected." (*Id.*) At the time of the hearing, Claimant stated that his pain was in both hips and down the backs of both legs, but primarily on the right side. (*Id.*)

Claimant also presented a letter and narrative medical report drafted by Dr. Rainey in support of the Claim Petition.[4,5] Dr. Rainey's medical reports stated the

---

[4] Dr. Rainey's letter can be found at page 127 of the reproduced record and the narrative medical report can be found at pages 134-138. Dr. Rainey's letter and medical report are summarized in finding of fact ¶ 8.

[5] In Claimant's Reproduced Record, Claimant includes all of Dr. Rainey's medical records as Exhibit C-3. (R.R. at 26-121.) However, Claimant did not offer those records before the WCJ and only presented the letter and the narrative report, as Exhibits C-3 and C-4. This Court may not consider extra-record evidence that is not included in the certified record on appeal. *See Pryor v. Workers' Comp. Appeal Bd. (Colin Service Sys.)*, 923 A.2d 1197, 1201 (Pa. Cmwlth. 2006). Accordingly, we will not consider this extra-record evidence in our review.

following. Dr. Rainey first saw Claimant on September 5, 2017, for an "evaluation of low back pain along with bilateral lower extremity pain with left foot and ankle weakness." (*Id*. ¶ 8.) The MRI taken on September 20, 2017 "showed left-sided L4-L5 evidence of previous surgical intervention but no evidence of residual disk herniation; however, there was left-sided foraminal narrowing as well as right-sided foraminal narrowing secondary to progressive arthritic changes." (*Id*.) Dr. Rainey saw Claimant again on September 25, 2017, with no new or additional symptoms reported. However, the results of the MRI prompted Dr. Rainey to prescribe a left-sided L4-L5 epidural steroid injection. Dr. Rainey saw Claimant again on November 28, 2017, where Claimant "continued to describe left buttock, posterolateral thigh pain and numbness and discomfort into his left posterior calf." (*Id*.) EMG/nerve conduction studies were performed, and Dr. Rainey concluded that there was no evidence of peripheral neuropathy or acute lumbar radiculopathy. Furthermore, any findings regarding the left leg were likely from his initial injury in 2015. Dr. Rainey saw Claimant again on December 28, 2017, after which Dr. Rainey scheduled Claimant for a right-sided L4-L5 epidural steroid injection. Claimant's symptoms remained the same after the right-sided injection, and Claimant experienced no pain relief. Dr. Rainey noted that the "MRI findings were consistent with [C]laimant's reported right leg symptoms as [C]laimant was scheduled for a decompression right side L4-L5 with foraminotomy and possible discectomy." (*Id*.) Dr. Rainey opined that within a "reasonable degree of medical certainty . . . the symptoms for which [Claimant] presented for treatment . . . would be a direct result of the reported work injury. . . . Th[e] mechanism of injury is consistent with th[e] reported symptoms and physical examination findings as well as his MRI." (R.R. at 138.)

4

Employer presented the IME report of Dr. Thomas.[6] Dr. Thomas examined Claimant on March 27, 2018, and reviewed Claimant's medical records. Dr. Thomas noted that Claimant was scheduled for surgery the day after his examination. Dr. Thomas indicated that Claimant reported during the IME that he had experienced an "onset of right lower extremity symptoms," but that Dr. Thomas found this report inconsistent with Dr. Rainey's medical notes, which had indicated pain in the lower left extremity. (FOF ¶ 10.) Dr. Thomas further explained that although Claimant described having some right-sided buttock and leg symptoms, Claimant was only sent for steroid injections to treat his left side. Dr. Thomas reviewed the MRI scan and noted that the radiologist did not report "any significant foraminal narrowing on the right to explain [C]laimant's symptoms." (*Id.*) Dr. Thomas also observed that "the EMG and nerve conduction studies of the right lower extremity were normal as the only findings were chronic radiculopathy on the left which would be consistent with a history of prior surgery." (*Id.*) Based upon the IME of Claimant, the history given by Claimant, and the review of Claimant's medical records and results of the diagnostic tests, Dr. Thomas opined that Claimant did not sustain a work injury, and that any prior treatment or Claimant's upcoming surgery, which Dr. Thomas did not believe was needed, were not related to any work injury. Dr. Thomas further noted that Claimant had continued to work his full, regular job and did not seek medical treatment until months after the onset of symptoms.

After reviewing the evidence, the WCJ made the following credibility determinations.

> Based upon the entire evidence of record, including [C]laimant's live
> testimony and demeanor, I specifically accept as credible, convincing

---

[6] Dr. Thomas's IME report can be found at pages 130-133 of the reproduced record and is summarized in finding of fact ¶ 10.

and persuasive the medical opinions of [Employer's] one-time IME physician, Dr. Victor Thomas, and specifically reject any contrary or conflicting medical opinions of [C]laimant's treating physician, Dr. Rainey. I also reject the testimony of [C]laimant where it conflicts with the medical opinions of Dr. Thomas as . . . Employer's Incident Report dated April 25, 2017[,] (see Claimant Exhibit 2) noted pain down [C]laimant's left side when he felt a pop and crack in his back when placing full boxes of paper (50[ ]pound[s] per box) under a table. Additionally, [C]laimant did not have any medical treatment for his alleged work injury until September of 2017 when he saw Dr. Rainey on September 5, 2017[,] and complained of low back pain along with bilateral lower extremity pain with left foot and ankle weakness and that since April, [C]laimant noted a return of left foot and ankle weakness as [C]laimant continued to work without limitations or restrictions. Additionally, I specifically accept the medical opinion of Dr. Thomas that [C]laimant's medical records indicate his pain was initially left-sided and has now become right-sided and that his lumbar MRI scan and EMG and nerve conduction studies do not show any findings indicative of any injury or anything to explain his right buttock complaints. The only abnormalities are on the left which are related to his previous surgery, and at this time, [C]laimant has no left-sided complaints. Furthermore, I find Dr. Rainey's conclusion that the symptoms from which [C]laimant presented for treatment beginning September 5, 2017[,] were a direct result of the reported work injury of April 25, 2017[,] as this was the onset of his lower extremity complaints to be inconsistent with his own medical records that [C]laimant was only complaining of left-sided extremity complaints and the MRI of September 20, 2017[,] showed no evidence of residual disk herniation or evidence of acute disk herniation as well as the EMG/nerve conduction studies performed on November 30, 2017, which showed no evidence of peripheral neuropathy; no evidence of acute lumbar radiculopathy; chronic denervation findings of the left leg, which are likely residual from his initial herniation, which was severe and involved a foot drop; and that these findings were consistent with chronic radiculopathy and best localized to L5. It was not until the visit on September 25, 2017[,] that Dr. Rainey indicated [C]laimant reported right leg symptoms, or five (5) months after April 25, 2017. Additionally, Dr. Rainey did not offer an explanation supported by any diagnostic tests for his conclusion that [C]laimant's bilateral lower extremity complaints were a direct result of the reported work injury of April 25, 2017[,] or that [C]laimant's scheduled surgical procedure on March 28, 2018[,] for decompression right-side[d] L4-L5 with foraminotomy was work-related. Therefore, I find as a fact that

6

> [C]laimant has not met his required burden of proof in the instant Claim Petition to establish a compensable work injury on April 25, 2017[,] by unequivocal medical evidence that was credible, convincing and persuasive as additionally, Claimant Exhibit 2 Incident Report completed on the same date of injury of April 25, 2017[,] only referred to pain down his left side and not the right side.

(*Id*. ¶ 11.)  Based on his rejection of Claimant's evidence as not credible, the WCJ concluded that "[C]laimant [did] not me[e]t his required burden of proof to establish a compensable work-related injury requiring medical treatment."  (WCJ Decision, Conclusions of Law ¶ 1.)

Claimant appealed to the Board, arguing that "the WCJ erred in denying his Claim Petition because substantial, competent evidence does not support the WCJ's finding that Claimant did not sustain a low back injury with leg radiculopathy on April 25, 2017."  (Board Opinion at 2.)  Upon review, the Board "conclude[d] the WCJ did not err in denying Claimant's Claim Petition and concluding that [Claimant] did not sustain a work-related injury on April 25, 2017."  (*Id*. at 5-6.) The Board held that Claimant bore the burden of proof on his Claim Petition and could not satisfy that burden because the WCJ had rejected Claimant's evidence as not credible, a determination that the Board could not disturb.  The Board held that Claimant's complaints were inconsistent and that the WCJ chose to accept Dr. Thomas's medical opinion, which constituted substantial evidence to support the WCJ's finding that Claimant did not sustain a work-related injury.  Therefore, the Board affirmed the WCJ's Decision.  Claimant now petitions this Court for review.[7]

---

[7] This Court's scope of review in WC appeals "is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated."  *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007).

## II. Discussion

### A. Parties' Arguments

On appeal to this Court, Claimant argues that

the WCJ's opinion [was] internally inconsistent in that he accept[ed] that the September 5, 2017 treatment record was Claimant's first medical record, and that it confirm[ed] Claimant complained of bilateral lower extremity pain. Despite the initial medical record clearly demonstrating complaints including right[-]sided buttock and leg pain, the WCJ f[ound] that Claimant's initial complaints were [left-]sided.[8]

(Claimant's Brief (Br.) at 8.) Claimant asserts that this inconsistent finding, based on the misapprehension of what Claimant's initial complaints were, led to the rejection of Claimant's testimony and Dr. Rainey's medical opinion and "serve[d] as one of the bases for the acceptance of [Dr. Thomas's] opinion." (*Id.*) Claimant asserts that Dr. Thomas's "opinion is rendered incompetent in that he takes a position (that the medical records establish left[-]sided only initial complaints) that is contrary to the established facts of record." (*Id.*) Further, Claimant argues that the WCJ "predicate[d] his credibility findings on the fact that Claimant's initial complaints were left-sided only" and this renders those "determinations illogical and unsupported by the evidence of record." (*Id.* at 9.) Claimant asserts that the Board "did not address Claimant's argument that the WCJ [cannot] accept medical records as true which confirm initial complaints of bilateral leg pain, while simultaneously accepting an opinion that the complaints were left[-]sided only." (*Id.* at 10.) According to Claimant, "this internal inconsistency . . . serves as the basis for [his]

---

[8] In his brief, Claimant states that the WCJ found that the initial complaints were right-sided. However, this appears to be a typographical error as the WCJ found that the initial complaints were left-sided and the remainder of Claimant's brief refers to an erroneous finding of left-sided complaints initially.

8

argument that the [D]ecision was not well reasoned,[9] and is not supported by substantial evidence of record." (*Id.*)

Employer responds that the WCJ engaged "in a detailed review of the entire record" and the WCJ "found [Dr. Thomas's] opinion to be credible." (Employer's Br. at 8.) Employer argues that the WCJ's findings were supported by Dr. Thomas's credited opinion that Claimant did not sustain a work-related injury, and Claimant's arguments "are merely a request to this Court to review the credibility determinations and the Findings of Fact as made by [the WCJ]." (*Id.*) Accordingly, Employer asserts that the Board's Order should be affirmed.

## B. Relevant Legal Principles

Before addressing Claimant's arguments, we set forth the relevant legal principles that guide our review. Because this is a claim petition proceeding, the claimant has the burden to establish all elements required to support an award of WC benefits. *Giant Eagle, Inc. v. Workers' Comp. Appeal Bd. (Thomas)*, 725 A.2d 873,

---

[9] Section 422(a) of the Workers' Compensation Act does not require a "well reasoned" opinion, only that an opinion be reasoned. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 834; *see PPL v. Workers' Comp. Appeal Bd. (Rebo)*, 5 A.3d 839, 845 (Pa. Cmwlth. 2010). Section 422(a) states that parties are "entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." 77 P.S. § 834. To the extent that Claimant's arguments could be viewed as a challenge on this basis, we determine that the opinion is reasoned. As the case law holds, a decision is reasoned if, in the case of a witness testifying in person, there is "a . . . conclusion as to which witnesses [the WCJ] deem[s] credible," *PPL*, 5 A.3d at 845, and when there is conflicting, competent medical experts who did not testify before the WCJ, the WCJ must articulate an "actual objective basis for the credibility determination." *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transport)*, 828 A.2d 1043, 1053 (Pa. 2003). If the WCJ's opinion allows for effective appellate review, it satisfies the reasoned decision requirement of Section 422(a). *PPL*, 5 A.3d at 845. The WCJ issued a reasoned decision here by providing objective bases for his credibility determinations and providing clear and distinct findings of fact and conclusions of law that allow for the Court to perform effective appellate review.

876 (Pa. Cmwlth. 1999). The claimant must prove that the "injury arose in the course of employment and was related thereto." *Frankiewicz v. Workers' Comp. Appeal Bd. (Kinder Morgan, Inc.)*, 177 A.3d 991, 995 (Pa. Cmwlth. 2017). This requires the claimant to establish a causal connection between the injury and work-related incident. *Giant Eagle, Inc*, 725 A.2d at 876. When there is no obvious causal connection, the claimant must provide unequivocal medical testimony that the injury was caused by the work incident. *Id.*

As the WCJ is the factfinder in WC proceedings, our review is limited to determining "whether the record contains substantial evidence that supports the [WCJ]'s findings." *Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan)*, 612 A.2d 434, 436 (Pa. 1992). In reviewing a substantial evidence challenge, we "consider the evidence as a whole, view the evidence in the light most favorable to the party [that] prevailed before the WCJ, and draw all reasonable inferences which are deducible from the evidence in" that party's favor. *Frog, Switch & Mfg. Co. v. Workers' Comp. Appeal Bd. (Johnson)*, 106 A.3d 202, 206 (Pa. Cmwlth. 2014) (quotation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *City of Philadelphia v. Workers' Comp. Appeal Bd. (Kriebel)*, 29 A.3d 762, 769 (Pa. 2011). "A reviewing court does not reweigh the evidence or review witness credibility; a reviewing court determines whether the WCJ's findings have the requisite measure of support in the record." *Casne v. Workers' Comp. Appeal Bd. (Stat Couriers, Inc.)*, 962 A.2d 14, 17 (Pa. Cmwlth. 2008). Furthermore, a reviewing court may "overturn [a] credibility determination only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational." *Id.* at 19.

Finally, whether the testimony of a medical witness is competent is a question of law and thus fully reviewable. *Swigart v. Workers' Comp. Appeal Bd. (City of Williamsport)*, 131 A.3d 117, 119 (Pa. Cmwlth. 2015) (citation omitted). "Competent medical evidence" is "evidence provided by a licensed physician." *Miller v. Bethlehem City Council*, 760 A.2d 446, 451 (Pa. Cmwlth. 2000). In determining whether a medical witness's testimony is competent, "[o]ur review must encompass the witness's entire testimony, and not merely isolated statements, in reaching our determination." *Dillon v. Workers' Comp. Appeal Bd. (City of Philadelphia)*, 853 A.2d 413, 418 (Pa. Cmwlth. 2004) (emphasis omitted) (quoting *Buchanan v. Workmen's Comp. Appeal Bd. (City of Philadelphia)*, 659 A.2d 54, 56 (Pa. Cmwlth. 1995)). "A medical expert's opinion is not rendered incompetent unless it is solely based on inaccurate or false information." *Casne*, 962 A.2d at 16. Furthermore, "[m]edical evidence which is less than positive or which is based upon possibilities may not constitute legally competent evidence." *Lewis v. Workmen's Comp. Appeal Bd.*, 498 A.2d 800, 802 (Pa. 1985) (citing *Bisesi v. Workmen's Comp. Appeal Bd.*, 433 A.2d 592 (Pa. Cmwlth. 1981)).

### C. Analysis

In analyzing the issues before us, we first recognize that Claimant's arguments are intertwined and dependent upon one another. Claimant challenges the WCJ's reliance on Dr. Thomas's medical opinion that the initial complaints were left-sided to make both credibility determinations and factual findings necessary to support the denial of the Claim Petition. (Claimant's Br. at 8.) Encompassing this challenge is Claimant's assertion that Dr. Thomas's opinion was incompetent "in that [Dr. Thomas] takes a position . . . that is contrary to the established facts of record." (*Id.*

11

at 9.) The "established facts of record" Claimant references is Dr. Rainey's single note from September 5, 2017, that Claimant presented for evaluation and treatment of "bilateral lower extremity pain with left foot and ankle weakness." (R.R. at 134.) To determine Dr. Thomas's competency, we must look at all of Dr. Thomas's medical report and opinion, as well as the other evidence in the record. *Dillon*, 853 A.2d 418. An opinion is competent unless it is less than positive or relies on probabilities, *Lewis*, 498 A.2d at 802, or, as Claimant asserts here, is based on **inaccurate** or false information, *Casne*, 962 A.2d at 16.

Reviewing the record, we cannot say that Dr. Thomas's opinion was based on inaccurate or false information, and, therefore, we disagree that his opinion was incompetent. There is evidence in the record that supports Dr. Thomas's medical opinion, and, ultimately, the WCJ's factual finding, that Claimant's initial complaints were left-sided. Employer's incident report, completed the day of the incident, stated that Claimant "felt a pop and crack in his back, followed by pain down his **left side**." (R.R. at 122 (emphasis added).) Although Dr. Rainey referenced, generally, bilateral complaints in Claimant's lower extremities during the September 5, 2017 examination, Dr. Rainey noted Claimant's specific complaints of "a return of the **left** foot and ankle weakness," as well as Claimant's "foot . . . slapping the ground **again**." (*Id*. at 134 (emphasis added).) Additionally, Claimant did not report "any additional or new symptoms." (*Id*. at 135.) At the follow-up visits on September 25, 2017, and November 28, 2017, improvement was noted, but there was "pain in [Claimant's] **left** buttock through the posterior thigh into the anterolateral **left** calf." (*Id*. (emphasis added)) Claimant received a steroid injection to his **left** side to treat the **left-sided** symptoms. (*Id*. at 135-36.) It was not until Claimant's examination on December 28, 2017, that Dr. Rainey's narrative

12

report references, for the first time, **specific right side symptoms** by stating that Claimant "continued to report bilateral leg symptoms but stated that currently, **not typically**, **right side is affected** greater than the left." (*Id*. at 136 (emphasis added).) This was the **first time** Dr. Rainey prescribed **any** treatment for Claimant's alleged right-sided complaints. (*Id.*)

Dr. Thomas's narrative report, credited by the WCJ, set forth his full physical examination of Claimant and review of Claimant's medical records, noting that, per Dr. Rainey's September 25, 2017 records, Claimant did not state that he had any issues with his right side. (*Id*. at 132.) This observation is consistent with Dr. Rainey's narrative report's description of Claimant's September 25, 2017 visit, as set forth above. Dr. Thomas also observed that, per that September 25, 2017 record, Claimant "**denied** any right lower extremity pain, paresthesias or weakness."[10] (*Id.*.) Dr. Thomas further noted that Claimant was experiencing left leg pain when seen initially, and later reported some right leg pain. (*Id*.) Dr. Thomas explained that during his IME, Claimant no longer complained of symptoms relating to his left side, but of pain on his right side and right leg. (*Id*.) Furthermore, Dr. Thomas's review of the MRI scan reflected that the only significant finding was the "postoperative changes on the left at L4-L5," and "[t]here was no mention by the radiologist of any significant foraminal narrowing on the right to explain [Claimant]'s symptoms." (*Id*.) The lack of objective findings related to Claimant's right side and the fact that Claimant did not seek treatment for five months led Dr. Thomas to opine that there were no "findings indicative of any injury or anything to explain his right buttock complaints" and that Claimant "did not sustain any work injury on April 25, 2017." (*Id*. at 133.)

---

[10] In his appeal before this Court, Claimant does not challenge this assertion.

13

Dr. Thomas's opinion that Claimant's pain originated on the left side and not the right is based on his interpretation of Dr. Rainey's medical records and that interpretation is consistent with the evidence presented. Although Claimant's records did mention bilateral pain, Dr. Thomas's opinion, when taken as a whole, relies on records of Dr. Rainey, which focused on the **left-sided complaints** that Claimant had at his initial appointments and treating those left-sided complaints. Therefore, Dr. Thomas's opinion is not based on inaccurate or false information and is legally competent. Having determined that Dr. Thomas's opinions were competent, we also conclude that there was no error of law or abuse of discretion in the WCJ relying on those opinions to make his credibility determinations or findings of fact.

On the question of whether the WCJ's credibility determinations should be overturned, because Dr. Thomas's testimony that Claimant's initial complaints were left-sided is competent, a conclusion also supported by the **unchallenged** Incident Report, the WCJ's credibility determinations are not based on a misapprehension of the facts. Thus, although Claimant disagrees with the WCJ's credibility determinations, those determinations will not be overturned, *Casne*, 962 A.2d at 19, or the evidence reweighed by this Court, *Bethenergy Mines, Inc.*, 612 A.2d at 436-37. On the question of whether the WCJ's findings of fact are supported by substantial evidence, we conclude that they are supported by Dr. Thomas's credited, competent testimony, as well as the Incident Report that reflects that Claimant experienced pain on his left side on April 25, 2017. Dr. Thomas opined, based on his examination of Claimant, his review of Claimant's medical records, and the results of Claimant's diagnostic tests, that any right-sided pain that Claimant eventually developed was not supported by any of the diagnostic tests or his

14

examination, and that Claimant did not sustain a work-related injury as a result of the April 25, 2017 incident. Because a reasonable mind could accept the credited, competent testimony of Dr. Thomas, as well as the Incident Report, as adequate to support a finding that Claimant's initial complaints were left-sided and the right-sided complaints of which Claimant now complains are not related to the work incident, the WCJ's findings are supported by substantial evidence. Further, because this evidence was credited over Claimant's contrary evidence and that evidence is substantial, competent evidence to support the WCJ's findings, there was no error in the WCJ's conclusion that Claimant could not satisfy his burden of proof on the Claim Petition.

## III.  Conclusion

For the foregoing reasons, the WCJ's findings are supported by substantial, competent evidence and the WCJ did not abuse his discretion in rendering his credibility determinations. Therefore, we discern no error in the Board's Order upholding the WCJ's conclusion that Claimant did not meet his burden of proof on the Claim Petition, and we affirm that Order.

_____
**RENÉE COHN JUBELIRER,** Judge

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Clarence Stewart,                    :
               Petitioner      :
                           :
          v.              :    No. 614 C.D. 2019
                           :
Workers' Compensation Appeal   :
Board (Goodwill of Pittsburgh),   :
               Respondent   :

## **O R D E R**

**NOW**, August 26, 2020, the Order of the Workers' Compensation Appeal Board dated April 25, 2019, is **AFFIRMED.**

 

 

**RENÉE COHN JUBELIRER,** Judge